IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.                                                          Criminal Action No. 3:16-cr-00009-JAG

JAMES WILLIAM HILL, III,
                Defendant.

## OPINION

Does a hate crime committed within one state, at one location, using only fists, affect interstate commerce? Is prosecuting that hate crime in the public interest and necessary to secure substantial justice? The defendant, James William Hill, III, raises these questions in his challenge to an indictment charging him with violating the Matthew Shepard-James Byrd, Jr. Hate Crimes Prevention Act (the "HCPA" or the "Act").

To the naked eye, it may appear that the federal government can regulate and criminalize anything it wants to. The Constitution, however, grants Congress limited power to legislate. One such grant of power is the Commerce Clause, which entrusts the federal government with the power to regulate interstate commerce. Pursuant to this grant of power, Congress adopted the section of the HCPA criminalizing hate crimes based on sexual orientation. As applied to Hill, the HCPA exceeds Congress's legislative power, and the Court therefore dismisses the indictment against Hill.

# I. BACKGROUND[1]

Hill and the victim, C.T., both worked at the Amazon Fulfillment Center[2] in Chester, Virginia. On May 22, 2015, Hill was working as a "re-binner"—moving items from various bins to cubbyholes prior to packaging—and C.T. was working as a "packer"— moving items from cubbyholes to boxes for packaging. About an hour in to their ten-hour work shifts, Hill approached C.T. without provocation and hit him several times in the face with his fists, making no statement during the assault. Afterwards neither Hill nor C.T. returned to the production line, resulting in Amazon losing productivity at both work stations for approximately nine hours.[3] Hill later said that he hit C.T. because of C.T.'s sexual orientation.

The Commonwealth of Virginia initially charged Hill with misdemeanor assault and battery in state court. On May 29, 2015, however, the state prosecutor requested the United States to "assume prosecution of this case as a hate crime" based in part on the fact that Virginia's hate crime statute does not cover crimes based on sexual orientation. (Gov't's Resp. Ex. 2.) On July 24, 2015, the United States Attorney General certified that Hill's prosecution under the HCPA "is in the public interest and is necessary to secure substantial justice." The

---

[1] Rule 12 of the Federal Rules of Criminal Procedure permits a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). The parties do not dispute the facts material to the Court's decision on the constitutionality of the HCPA as applied to Hill.

[2] In Amazon-ese, a warehouse is called a "fulfillment center." Amazon has warehouses throughout the United States from which it ships goods that fulfill the lives of people everywhere.

[3] The government attempts to quantify this loss using Amazon's benchmark rates for re-binners and packers. (*See* Gov't's Resp. 3 ("According to Amazon, C.T.'s inability to return to work meant that approximately 1,710 items were not packed or shipped. Defendant Hill's inability to return to work prevented him from re-binning approximately 3,897 items.") (citation omitted).) The government also says that "[t]he packages that were being prepared by C.T. were destined for locations mainly outside of Virginia." (*Id.*) Neither the specific quantity of packages nor their destination affects the analysis in this case.

Commonwealth dropped the misdemeanor assault charge in favor of federal prosecution, and a federal grand jury indicted Hill under the HCPA. Hill now moves to dismiss the indictment.

## II. DISCUSSION[4]

Congress passed the HCPA, codified at 18 U.S.C. § 249, to punish certain hate crimes. The Act creates two distinct crimes. First, § 249(a)(1) focuses on hate crimes based on "actual or perceived race, color, religion, or national origin." 18 U.S.C. § 249(a)(1). This offense is not at issue here.[5]   Second, § 249(a)(2) focuses on hate crimes based on "actual or perceived religion, national origin, gender, sexual orientation, gender identity, or disability." 18 U.S.C. § 249(a)(2). Congress passed this subsection based on its power under the Commerce Clause.

To obtain a conviction under § 249(a)(2), the government must prove (1) that the defendant willfully caused bodily injury to another person, or attempted to cause bodily injury though use of a dangerous weapon; (2) that the "but-for cause" of the assault was the actual or perceived religion, national origin, gender, sexual orientation, gender identity, or disability of the victim; and (3) that the conducts falls within a "circumstance described in subparagraph (B)."[6] 18 U.S.C. § 249(a)(2)(A); *see United States v. Miller*, 767 F.3d 585, 594 (6th Cir. 2014). "[S]ubparagraph (B)"—relevant in this case—states as follows:

> [T]he circumstances described in this subparagraph are that–
> (i) the conduct . . . occurs during the course of, or as the result of, the travel of the defendant or the victim–
> (I) across a State line or national border; or

---

[4] Rule 12 permits a court to dismiss a defective indictment. Fed. R. Crim. P. 12(b)(3)(B). "An indictment is defective if it alleges a violation of an unconstitutional statute." *United States v. Brown*, 715 F. Supp. 2d 688, 689 (E.D. Va. 2010) (citing *In re Civil Rights Cases*, 109 U.S. 3, 8– 9 (1883)).

[5] Congress passed—and courts have upheld—this subsection based on a different grant of power, the Thirteenth Amendment's authorization of legislation to eliminate badges and incidents of slavery. *See, e.g., United States v. Hatch*, 722 F.3d 1193, 1205–06 (10th Cir. 2013).

[6] A different section of the HCPA extends its reach to federal lands. *See* 18 U.S.C. § 249(a)(3).

> (II) using a channel, facility, or instrumentality of interstate or foreign commerce;
>
> (ii) the defendant uses a channel, facility, or instrumentality of interstate or foreign commerce in connection with the conduct . . . ;
>
> (iii) in connection with the conduct . . . , the defendant employs a firearm, dangerous weapon, explosive or incendiary device, or other weapon that has traveled in interstate or foreign commerce; or
>
> (iv) the conduct . . . –
>
>> (I) interferes with commercial or other economic activity in which the victim is engaged at the time of the conduct; or
>>
>> (II) otherwise affects interstate or foreign commerce.

18 U.S.C. § 249(a)(2)(B).

Finally, to "ensure the federal government will assert its . . . hate crimes jurisdiction only in a principled and properly limited fashion," *United States v. Jenkins*, 909 F. Supp. 2d 758, 773 (E.D. Ky. 2012) (quoting H.R. 86, 111th Cong. (1st Sess. 2009)), Congress included a certification requirement. Specifically,

> No prosecution of any offense described in this subsection may be undertaken by the United States, except under the certification in writing of the Attorney General, or a designee, that–
>
> (A) the State does not have jurisdiction;
>
> (B) the State has requested that the Federal Government assume jurisdiction;
>
> (C) the verdict or sentence obtained pursuant to State charges left demonstratively unvindicated the Federal interest in eradicating bias-motivated violence; or
>
> (D) a prosecution by the United States is in the public interest and necessary to secure substantial justice.

18 U.S.C. § 249(b)(1).

### A. Challenge to the Certification Requirement

The Court first addresses Hill's challenge to the certification requirement in this case, because its determination could resolve the case without needing to reach the constitutional issues raised. Hill asks the Court to "review the certification process and find that this prosecution fails to meet the requirement that prosecution is in the public interest and necessary

4

to secure substantial justice." (Def.'s Mot. 1.)  The government responds that the certification requirement in § 249 qualifies as an exercise of prosecutorial discretion not subject to judicial review and, even if the Court could review the decision, that this prosecution satisfies the requirement.  While the Court finds that it can review the HCPA's certification requirement, it concludes that the government meets that requirement in this case.

The Fourth Circuit has not addressed the reviewability of certification under the HCPA. In a similar case, however, the Fourth Circuit held that courts can review the certification of a juvenile for trial in federal court. *United States v. Juvenile Male No. 1 (Juvenile Male)*, 86 F.3d 1314, 1319 (4th Cir. 1996).  The juvenile transfer statute, codified at 18 U.S.C. § 5032, requires the Attorney General to certify the propriety of proceeding against a juvenile in federal court. *Juvenile Male*, 86 F.3d at 1317.  Specifically, the Attorney General must:

> certif[y] to the appropriate district court of the United States that (1) the juvenile court or other appropriate court of a State does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency, (2) the State does not have available programs and services adequate for the needs of juveniles, or (3) the offense charged is a crime of violence that is a felony or [one of a number of specified drug or firearm offenses], and that there is a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction.

18 U.S.C. § 5032.  In *Juvenile Male*, the Fourth Circuit held that courts "can and must first satisfy [them]selves that [their] jurisdiction has been properly invoked.  [Courts] do so by reviewing the stated reasons underlying the government's decision to proceed in federal court." 86 F.3d at 1321.  The court found that the "prongs of the certification statute act as limits on the federal courts' jurisdiction to act in this sphere." *Id.* at 1319.

While § 5032 and § 249 are not identical, the similarities in the statutes matter more than the differences.  As an initial matter, the certification requirements in both statutes reflect

congressional intent "to limit the types of cases that the executive *should* bring in federal court." *Juvenile Male*, 86 F.3d at 1319; *see Jenkins*, 909 F. Supp. 2d at 773 ("One of the stated purposes of [the certification] requirement [in the HCPA] was to, 'ensure the federal government will assert its new hate crimes jurisdiction only in a principled and properly limited fashion.'" (quoting H.R. 86, 111th Cong. (1st Sess. 2009))). Further, the structures of the statutes mirror each other, listing a handful of specific reasons justifying certification followed by a catch-all.

The language of the catch-all provisions does vary slightly—§ 5032 looks for "a substantial Federal interest," 18 U.S.C. § 5032, while § 249 requires that the prosecution "[be] in the public interest and necessary to secure substantial justice," 18 U.S.C. § 249(b)(1)(D). Nevertheless, *Juvenile Male* puts the possible reasons justifying certification in § 5032 on the same level, concluding that "[i]n the final analysis, whether there is a 'substantial Federal interest' in a given case implicates [the court's] authority over the juvenile to the same extent and for many of the same reasons as whether the juvenile is alleged to have violated a federal law, whether that violation is a 'crime of violence,' or whether the appropriate state authorities have refused to act." 86 F.3d at 1320–21. Regardless of the slight differences in the statues, *Juvenile Male* opens the door to review the Attorney General's certification under the HCPA.[7]

The scope of review, however, is limited. "In our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 607 (1985) (quoting *United States v. Goodwin*, 457 U.S. 368, 380 n.11 (1982)). "[S]o

---

[7] The government relies on *United States v. Jenkins* to urge the Court not to review the certification. Although *Jenkins* found certification unreviewable, that court based its reasoning on binding Sixth Circuit precedent holding that courts should not review certification under § 5032. 909 F. Supp. 2d at 774. Indeed, *Jenkins* cites the Fourth Circuit's decision in *Juvenile Male* "permitt[ing] review of a similar certification requirement," contrasting the Fourth Circuit with "ten other circuits [that] have reached the opposite conclusion." *Id.* Given this distinction and the Fourth Circuit's status as an outlier, *Jenkins* actually supports the idea that, like it or not, courts in the Fourth Circuit should review HCPA certification.

long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Id.* (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)).

The Attorney General's decision to certify this case deserves great deference. As *Juvenile Male* recognized, "[w]hether there is a 'substantial Federal interest' [under § 5032] . . . comes closer to the sort of discretionary decision more commonly thought of as the type of prosecutorial decisions that are immune from judicial review." 86 F.3d at 1319 (internal citation omitted). Accordingly, the Court must "give the government's decision in that regard more deference." *United States v. T.M.*, 413 F.3d 420, 425 (4th Cir. 2005) (citing *Juvenile Male*, 86 F.3d at 1319).

In this case, the government meets the certification requirement. The government's decision takes into account the fact that Virginia's hate crime statute does not cover crimes based on sexual orientation, leaving the Commonwealth with the sole option of charging simple assault—an option that does not consider Hill's alleged discriminatory intent. Taking this statutory difference into account, and giving appropriate deference to the Attorney General's decision to certify this case, this prosecution qualifies as "in the public interest and necessary to secure substantial justice." 18 U.S.C. § 249(b)(1)(D).

The Court denies Hill's motion to dismiss on the ground that this prosecution fails to meet the HCPA's certification requirement.

### B. Challenge to the Constitutionality of the HCPA

The government cannot constitutionally prosecute Hill under the HCPA.

Congress passed § 249(a)(2) pursuant to its authority under the Commerce Clause. The Commerce Clause gives Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3. The Supreme Court has identified three broad categories of activity that Congress may regulate under its commerce power: (1) "the use of the channels of interstate commerce," such as highways, railroads, air traffic routes, rivers, and telephone lines; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce;" and (3) "those activities having a substantial relation to interstate commerce, *i.e.*, those activities that substantially affect interstate commerce." *United States v. Lopez*, 514 U.S. 549, 558–59 (1995) (internal citations omitted).

Section 249(a)(2) does not fall under either of the first two categories. The statute addresses violent crime, which is neither the use of channels of interstate commerce, nor an instrumentality of interstate commerce, nor a person or thing in interstate commerce. *See United States v. Morrison*, 529 U.S. 598, 609 (2000).

The constitutional analysis turns, then, on the third category: whether in Hill's case the HCPA regulates "activities that substantially affect interstate commerce." *Lopez*, 514 U.S. at 559. In *Lopez* and *Morrison* the Supreme Court prescribed the proper framework for analyzing statutes falling within the third category. To determine whether the regulated activity substantially affects interstate commerce, courts should consider the statute's (1) economic nature, (2) legislative findings, (3) connection to interstate commerce, and (4) express jurisdictional elements. *See Morrison*, 529 U.S. at 610–13; *Lopez*, 514 U.S. at 559–65.

### i. The HCPA's Economic Nature

A statute's economic nature can, by itself, render a statute constitutional under the Commerce Clause. *See id.* at 559–60. When evaluating the economic nature of a statute passed

pursuant to the Commerce Clause, courts should uphold the legislation "[w]here [intrastate] *economic* activity substantially affects interstate commerce." *Id.* at 560 (emphasis added). Accordingly, *Lopez* concluded that the Gun-Free School Zones Act "[was] a criminal statute that by its terms ha[d] nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." *Id.* at 561.  Similarly, *Morrison* held that "[g]ender-motivated crimes of violence are not, in any sense of the phrase, economic activity." 529 U.S. at 613.  The Court "reject[ed] the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce." *Id.* at 617.

Applying these principles to the HCPA, crimes of violence motivated by discriminatory animus "are not, in any sense of the phrase, economic activity." *Id.* at 613.  Punching someone who is filling up boxes in a warehouse is not the kind of substantial effect on the economy required by the Constitution.  After *Lopez* and *Morrison*, it is difficult to imagine any set of facts in which the HCPA could qualify as economic legislation.  Certainly, as applied to Hill, the Court cannot uphold the HCPA based on the statute's economic nature.

### ii. The HCPA's Legislative Findings

The Court next considers Congress's legislative findings.  "[C]ongressional findings . . . enable [the court] to evaluate the legislative judgment that the activity in question substantially affected interstate commerce." *Lopez*, 514 U.S. at 562–63.  "But the existence of congressional findings is not sufficient, by itself, to sustain the constitutionality of Commerce Clause legislation." *Morrison*, 529 U.S. at 614.

*Morrison* considered legislative findings almost identical to those accompanying the HCPA.  In passing the Violence Against Women Act of 1994 ("VAWA"), Congress found that

9

gender-motivated violence has long tentacles.  It deters victims from traveling interstate, from working in interstate business, from transacting interstate business, and from going to places involved in interstate commerce.  This, Congress said, diminishes national productivity, increases medical costs, and decreases the supply of and the demand for interstate products.  *Id.* at 615 (citing H.R. Conf. Rep. No. 103–711, at 385, *reprinted in* 1994 U.S.C.C.A.N. 1803, 1853).  *Morrison* rejected these legislative findings, noting that "[t]he reasoning . . . seeks to follow the but-for causal chain from the initial occurrence of violent crime (the suppression of which has always been the prime object of the States' police power) to every attenuated effect upon interstate commerce."  *Id.*  The Court found this method of reasoning "unworkable if [the Court is] to maintain the Constitution's enumeration of powers."  *Id.*

In passing the HCPA, Congress made almost identical findings regarding how violence based on discriminatory animus substantially affects interstate commerce:

> (A) The movement of members of targeted groups is impeded, and members of such groups are forced to move across State lines to escape the incidence or risk of such violence.
> (B) Members of targeted groups are prevented from purchasing goods and services, obtaining or sustaining employment, or participating in other commercial activity.
> (C) Perpetrators cross State lines to commit such violence.
> (D) Channels, facilities, and instrumentalities of interstate commerce are used to facilitate the commission of such violence.
> (E) Such violence is committed using articles that have traveled in interstate commerce.

HCPA, Pub. L. No. 111-84, Div. E, § 4702, 123 Stat. 2190, 2835–36 (2009) (codified at 18 U.S.C. § 249 Note).  While Congress did not use the exact same language in the HCPA as it did in the VAWA—presumably based on the lessons learned from *Lopez* and *Morrison*—the flaws remain the same.  Just because Congress says something is so does not make it so.

*Morrison*'s evaluation of legislative findings applies equally here. To adopt the government's argument would allow Congress to regulate virtually any crime. "Indeed, if Congress may regulate gender-motivated violence, it would be able to regulate murder or any other type of violence . . . ." *Morrison*, 529 U.S. at 615.

The legislative findings do not provide a basis to find the HCPA constitutional as applied to Hill.

### iii. The HCPA's Connection to Interstate Commerce

Courts should also consider a statute's connection to interstate commerce when determining whether the activity regulated by the statute substantially affects interstate commerce. *Id.* at 612. This prong of the analysis tends, at least in this case, to blur with the consideration of Congress's legislative findings, because they both ask about the connection between the regulated activity and interstate commerce.

Again, *Morrison* has already considered the connection between a statute regulating violence based on discriminatory animus and interstate commerce, holding such a connection to be insufficient. *Id.* at 615–16. The attenuated connection between gay-bashing and interstate commerce is not enough to hold the HCPA constitutional as applied to Hill.

### iv. The HCPA's Express Jurisdictional Elements

The HCPA comes closest to passing constitutional muster as applied to Hill by including a "jurisdiction element" requiring the offense to affect interstate commerce. A jurisdictional element, also known as a "hook," requires proof that the criminal conduct affected interstate commerce. *See Lopez*, 514 U.S. at 561. At the jurisdictional element level, the element of the offense merges with the constitutional requirement. *United States v. Rodia*, 194 F.3d 465, 473 (3d Cir. 1999) ("A jurisdictional element is only sufficient to ensure a statute's constitutionality

11

when the element either limits the regulation to interstate activity or ensures that the intrastate activity to be regulated falls within one of the three categories of congressional power."). To prove the offense, the government must establish its constitutionality with actual evidence of an effect on interstate commerce. *See, e.g.*, *United States v. Mason*, 993 F. Supp. 2d 1308, 1317 (D. Or. 2014) (holding that "whether or not the weapon [used in the offense] actually traveled in interstate or foreign commerce is for the jury"). Since the government must prove the connection with interstate commerce beyond a reasonable doubt, the jurisdictional hook ensures that, as applied to a criminal defendant, the law is a constitutional exercise of legislative power.

Specifically, the HCPA's hook says that the government must prove: (i) that the defendant's conduct occurred during or as a result of travel; (ii) that the defendant used a "channel, facility, or instrumentality" of interstate commerce in committing the offense; (iii) that the defendant used a weapon or other device that had travelled in interstate commerce; or (iv) that the offense interfered with commercial or economic activity "in which the victim [was] engaged at the time of the [offense]" or "otherwise affects interstate or foreign commerce." 18 U.S.C. § 249(a)(2)(B).

The conduct in this case does not satisfy any of the first three elements of the jurisdictional hook. The assault had nothing to do with travel. The defendant did not use a weapon or an instrumentality or a channel of interstate commerce. If Hill's prosecution is constitutionally permissible, it must be caught on the hook's final barb—the catch-all that the offense interferes with commercial or economic activity or otherwise affects interstate commerce.

The government says it can catch Hill on the jurisdictional hook by showing that the assault took place at the Amazon warehouse. At the warehouse, Hill's victim engaged in "the

quintessentially 'economic activity' of packaging items for interstate and international delivery."
(Gov't's Resp. 19.)   Further, the government would attempt to "prove that the defendant's
conduct 'otherwise affected interstate or foreign commerce' by preventing both C.T. and
defendant Hill from returning to their respective production lines for the duration of their 10-
hour shifts, thereby precluding the interstate and international delivery of an estimated 1,710
packages." (*Id.* at 20.)

If the Court accepted the government's argument, the reach of the HCPA would barely
have an end, as the statute would cover any conduct that occurs at any commercial
establishment.   This argument would effectively federalize commercial property and allow
Congress to regulate conduct occurring on commercial premises, even when the conduct—here,
violence based on discriminatory animus—has no connection to the commercial nature of the
premises.[8]   In fact, the government's argument could extend the HCPA into someone's home if,
for example, a person prepared, packaged, and eventually shipped merchandise out-of-state.   The
Court rejects such an argument.

The government's argument also uses the same logic as the productivity arguments
already rejected by *Lopez. See Brzonkala v. Va. Polytechnic Inst & State Univ.*, 169 F.3d 820,
838 (4th Cir. 1999), *aff'd sub nom. Morrison*, 529 U.S. 598 (rejecting the argument that "national
productivity (including *reduced employment, production*, and demand) . . . ultimately affect[s]

---

[8] Further, if the conduct underlying an HCPA prosecution has any sort of commercial
motivation—if, for example, Hill had punched C.T. because of both C.T.'s sexual orientation
and C.T. having taken Hill's job as a packer—then the government could never obtain a
conviction, as the HCPA requires "but-for" causation. *See Miller*, 767 F.3d at 594; *Brzonkala v.
Va. Polytechnic Inst & State Univ.*, 169 F.3d 820, 834 (4th Cir. 1999), *aff'd sub nom. Morrison*,
529 U.S. 598 ("The statute thus explicitly excludes from its purview those violent crimes most
likely to have an economic aspect—crimes arising solely from economic motives—and instead
addresses violent crime arising from the irrational motive of gender animus, a type of crime
relatively unlikely to have any economic character at all.").

the national economy, and presumably interstate commerce as well" (emphasis added)). Although the facts of this case have a closer connection with decreased productivity than the situations presented in *Lopez* and later *Morrison*, the argument remains the same.   The problem—like in *Lopez* and *Morrison*—is where such an argument ends.   Under this argument, the HCPA would reach Hill's conduct if he had assaulted C.T. in the parking lot on the way into work, preventing C.T. from completing his entire ten-hour shift and precluding the delivery of packages.   Indeed, this argument would also extend to an assault of C.T. at C.T.'s home prior to his ten-hour shift.   The Supreme Court rejected the productivity argument in *Lopez* and *Morrison*, and the argument gets no further in Hill's case.

Accordingly, as applied to Hill, the express jurisdictional elements in the HCPA do not save the constitutionality of this prosecution because they do not "either limit[] the regulation to interstate activity or ensure[] that the intrastate activity . . . falls within one of the three categories of congressional power." *Rodia*, 194 F.3d at 473.

### III. CONCLUSION

To summarize, the government met the certification requirement in this case before undertaking this prosecution under the HCPA.   Nevertheless, the government can proceed no further because the HCPA as applied to Hill exceeds Congress's authority under the Commerce Clause, rendering this prosecution unconstitutional.   Because the Court holds the HCPA unconstitutional as applied to Hill, the Court does not address Hill's other constitutional challenges—that the HCPA is facially unconstitutional,[9] and that § 249(a)(2)(B)(iv) is unconstitutionally vague and overbroad.

---

[9] Typically, "[w]here . . . a party brings both as-applied and facial constitutional challenges, it is appropriate to determine first whether the law is constitutional as applied to the challenging party's conduct, and then only if the as-applied challenge fails, to determine whether it is

This opinion in no way diminishes the seriousness of crimes based on discriminatory animus.  The Federal Bureau of Investigation reported that in 2014, "[t]here were 5,462 single-bias incidents involving 6,681 victims."  Press Release, Federal Bureau of Investigation, FBI Releases 2014 Hate Crime Statistics (Nov. 16, 2015), *available at* https://www.fbi.gov/news/pressrel/press-releases/fbi-releases-2014-hate-crime-statistics.  Of those incidents, "18.7 percent were victimized because of the offenders' sexual-orientation bias."  *Id.*  Most states have passed hate crime statutes.  For unclear reasons, Virginia's does not include crimes based on sexual orientation or gender identity.  Va. Code Ann. § 52-8.5 (defining hate crimes as criminal or other illegal acts based on "race, religion or national origin").

Despite these serious statistics and discrepancies in protection, "a problem does not become a constitutionally permissible object of congressional regulation under the Commerce Clause merely because it is serious."  *Brzonkala*, 169 F.3d at 843.

The Court will enter an appropriate Order dismissing this case.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 4/22/16
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

necessary to consider the facial challenge."  *United States v. Masciandaro*, 648 F. Supp. 2d 779, 786 (E.D. Va. 2009).