IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 3:16CR9 |
| | ) | |
| JAMES WILLIAM HILL, III | ) | |
|       Defendant, | ) | |
| | ) | |

## **MEMORANDUM IN SUPPORT OF DEFENDANT'S PROPOSED JURY INSTRUCTIONS**

COMES NOW, James William Hill, III, by counsel and files this Memorandum in Support of Defendant's Proposed Jury Instructions. On October 6, 2017, the Court held a Status Conference and ordered that the Parties file proposed Jury Instructions related to the substantive charge. Defendant has submitted proposed Jury Instructions, and includes this Memorandum to explain his position. Defendant reserves the right to amend these instructions or to submit additional or alternative instructions as required during the course of the trial.

## **Background**

Mr. Hill has been charged in a one-count indictment charging a violation of the Hate Crimes Prevention Act, 18 U.S.C. § 249(a)(2) ("HCPA"). The indictment alleges that, on or about May 22, 2015, Mr. Hill willfully caused bodily injury to C.T. because of C.T.'s actual and perceived sexual orientation, and that "in connection with the offense, . . . Hill . . . interfered with commercial and other economic activity in which C.T. was engaged at the time of the conduct, and which offense otherwise affected interstate and foreign commerce." (Doc. 1.)

In order to find Mr. Hill guilty, the jury must find that the government has proven each of the following elements beyond a reasonable doubt:

    a.   First, that the Defendant **willfully** caused **bodily injury** to C.T.;

1

b. Second, that the Defendant acted **because of** the actual or perceived sexual orientation of C.T.;

c. Third, that defendant would not have acted absent, or "but for," the defendant's prejudice against the actual or perceived sexual orientation of C.T.;

d. Fourth, that in connection with the offense, the Defendant interfered with the commercial or other economic activity in which C.T. was engaged at the time of the conduct; and that the Defendant's conduct **substantially affected interstate or foreign commerce**.[1]

Because the HCPA has been used sparingly since it was enacted in 2009, there is little direct guidance related to jury instructions. However, the text of the statute, as well as the notes, provide some guidance. 18 U.S.C. § 249(c) (defining crime); 18 U.S.C. § 249, Rules of Construction § 3 (requiring "physical violence"); 18 U.S.C. § 1365(h)(4) (defining "bodily injury"). Two courts have considered other sections of the HCPA, and provided guidance related to elements common to the section charged in this case. *United States v. Miller*, 767 F.3d 585, 591-95 (6th Cir. 2014), *certiorari denied*, 137 S. Ct. 1065 (requiring a "but-for" causation); *Glenn v. Holder*, 690 F.3d 417, 422 (6th Cir. 2012) (defining "willful" under 18 U.S.C. § 249). Defendant agrees with the rationale set forth by these courts.

However, no court has considered or interpreted the section charged in this case, specifically the jurisdictional element necessary to establish federal jurisdiction. For that reason, Defendant provides the additional argument set forth below to explain his position.

---

[1] Language defining the terms in bold is included in Defendant's Proposed Jury Instruction.

**Argument**

**A. The Supreme Court Has Unequivocally Required a Substantial Effect on Interstate Commerce**

Courts have universally held that a statute which does not directly regulate economic activity[2] must include as an element a *substantial* effect on interstate commerce. The Supreme Court in *Lopez* directly considered what degree of an effect an activity must have on interstate commerce. The Court stated, "admittedly, our case law has not been clear whether an activity must 'affect' or 'substantially affect' interstate commerce in order to be within Congress' power to regulate it under the Commerce Clause." *United States v. Lopez*, 514 U.S. 549, 559 (1995). "We conclude, consistent with the great weight of our case law, that the proper test requires an analysis of whether the regulated activity 'substantially affects' interstate commerce." *Id*. Other courts, including the Fourth Circuit, have unwaveringly followed course. *United States v. Gilbert*, 677 F.3d 613, 626 (4th Cir. 2012) (setting forth test as "substantially affects interstate commerce"); *United States v. Jenkins*, 909 F. Supp. 2d 758, 767 (E.D. Ky. 2012) (Congress may only regulate activity having a "substantial impact on interstate commerce").

Such a rule flows from the Court's observation that Congress' power under the Commerce Clause is limited, and must "not be extended so as to embrace effects upon interstate commerce so indirect and remote that to embrace them, in view of our complex society, would effectually

---

[2] Direct regulation of commerce includes regulations that target the use of channels of interstate commerce, *see, e.g., Caminetti v. United States*, 242 U.S. 470 (1917) (criminalizing interstate transportation of women for immoral purposes), and instrumentalities of interstate commerce, or persons or things in interstate commerce, such as regulating railroad rates or consumer credit. *See, e.g., Shreveport Rate Cases*, 234 U.S. 342 (1914); *Perez v. United States*, 402 U.S. 146 (1971). Alternatively, the statute may be an essential part of a larger regulation of economic activity. *Lopez*, 514 U.S. at 561. The HCPA is a stand-alone statute and the government has not suggested it is a direct regulation of commerce or part of a larger regulation of economic activity.

obliterate the distinction between what is national and what is local." *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 37 (1937). Rather, something more than a "relatively trivial impact on commerce" is necessary under the Commerce Clause. *Lopez*, 514 U.S. at 558. Rather, the government must demonstrate "*a substantial relation to interstate commerce.*" *United States v. Morrison*, 529 U.S. 598, 609 (2000) (emphasis added).

### B. Requiring a *De Minimis* Impact on Commerce is Only Available Where the Statute Substantively Regulates Commercial Activity

The government likely will argue that they must prove only *some relation* or a *de minimis* impact on interstate commerce. *See, e.g.*, Br. for United States, *United States v. Hill*, No. 16-4299 (4th Cir. July 28, 2016) ("the regulated acts necessarily relate to commerce"); Gov't Resp. at 11, Doc. 21 (suggesting that the "low bar for proof of an effect on interstate commerce" that applies in Hobbs Act cases should apply in this case). That argument is misguided because the Supreme Court has clearly instructed that requiring such a slight impact on interstate commerce is only appropriate where a statute already has a substantive connection to commerce that does not exist here. *See Brzonkala v. Virginia Polytechnic Institute*, 169 F.3d 820, 901 (4th Cir. 1999) (en banc), *aff'd sub nom. United States v. Morrison*, 529 U.S. 598 (2000) ("*Lopez* made clear that such power does not extend to the regulation of activities that merely have some relationship with or effect upon interstate commerce, but rather, extends only . . . to those activities 'having a substantial relation to interstate commerce . . .'").

Where the object of a statute is the regulation of commerce, courts logically require less of an individual impact to interstate commerce by allowing the government to prove only a minimal effect on commerce. *See United States v. Tillery*, 702 F.3d 170, 174 (4th Cir. 2012) ("Our precedent is clear – a robbery has a 'minimal effect' on interstate commerce when it depletes the assets of an 'inherently economic enterprise.'"); *Gonzales v. Raich*, 545 U.S. 1, 17 (2005) ("[W]hen a general

4

regulatory statute bears a substantial relation to commerce, the de minimis character of individual instances arising under that statute is of no consequence.") Permitting a de minimis impact is not appropriate where the object of the statute is not economic activity, but rather is violent conduct: "We . . . reject the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce." *Morrison*, 529 U.S. at 617. For this reason, the Court must consider the object of the statute.

1. <u>The HCPA criminalizes violence, a local and non-economic activity</u>.

Absent the jurisdictional prong, the HCPA does not in any way regulate or relate to interstate commerce. The HCPA is a criminal statute that prohibits "willfully caus[ing] bodily injury to any person." Like the statutes in *Lopez* and *Morrison*, it is "a criminal statute that by its terms has nothing to do with 'commerce.'" *Lopez*, 514 U.S. at 558-61 (Gun-Free School Zones Act proscribing the knowing possession of a firearm within a school zone); *Morrison*, 529 U.S. at 613 (Violence Against Women Act providing civil penalties against a person who commits a crime of violence motivated by gender). Congress intended as much, explaining that the purpose of the HCPA is to address hate crimes that "involve the purposeful selection of victims for violence and intimidation based on their perceived attributes; they are a violent and dangerous manifestation of prejudice against identifiable groups." House Report at 5. The statute does not prohibit violence related to an economic act, such as assaults done in order to further an economic interest.[3] As such, the HCPA regulates non-economic activity. *See Jenkins*, 909 F.

---

[3] Some statutes that regulate violent conduct, such as animal fighting, may be characterized as economic where the statute regulates an economic endeavor that includes violence. For example, the statute legislating animal fighting does not simply prohibit animal fighting, but rather criminalizes an "animal fighting venture" which is defined as fighting for "purposes of sport, wagering, or entertainment." 7 U.S.C. § 2156(g)(1). The Fourth Circuit determined that "[t]here can be no serious dispute that the terms 'sport,' 'wagering,' and 'entertainment' each are closely aligned in our culture with economics and elements of commerce." *Gibert*, 677 F.3d at 624.

Supp. 2d at 768 ("The conduct prohibited by the HCPA is bias-motivated violence, which is the same type of activity the Supreme Court in *Morrison* identified as noneconomic.").

2. <u>The jurisdictional element, requiring interference with an economic or commercial act, does not transform the statute into one regulating commerce</u>.

The addition of a jurisdictional element, requiring interference with an economic or commercial act, does not alter the object of the statute. It does not transform a statute regulating violence into one regulating commerce. *Jenkins*, 909 F. Supp. 2d at 767 (holding that "the case law does not suggest that the talismanic use of jurisdictional element language can transform a law otherwise regulating violent activity into a law regulating channels or instrumentalities of interstate commerce"). Congress never suggested otherwise, noting that the jurisdictional elements were a "significant limiting principle[]" placed on the HCPA's regulation of violence to ensure that Congress did not exceed the bounds of the Commerce Clause. House Report 28. Congress' requirement that the crime affect interstate commerce created jurisdiction for bias-based assaults, where it otherwise did not have such jurisdiction.

Courts have also treated jurisdictional elements as limitations rather than defining elements of a statute. The Supreme Court recently differentiated between the two, explaining that "substantive elements primarily define[] the behavior that the statute calls a 'violation' of federal law, — or, as the Model Penal Code puts the point, they relate to the harm or evil the law seeks to prevent." *Torres v. Lynch*, 136 S. Ct. 1619, 1624 (2016) (citations and internal quotation marks omitted). "The jurisdictional element, by contrast, ties the substantive offense . . . to one of Congress's constitutional powers." *Id*.

The Fourth Circuit has followed suit. In considering whether the animal fighting statute relates to commerce, this Court evaluated the statutory language without reference to the jurisdictional prong. Only after determining that the statute otherwise related to commerce did the

6

court discuss the import of the jurisdictional element. *United States v. Gibert*, 677 F.3d 613, 624, 626 (4th Cir. 2012) (separately considering jurisdictional language "in or affecting interstate or foreign commerce" from other statutory language to determine whether statute relates to commerce); *see also United States v. Buculei*, 262 F.3d 322, 329 (4th Cir. 2001) (considering jurisdictional element of enticement statute only after concluding that offense had substantial effect on interstate commerce). Thus, the relevant jurisdictional elements do not alter the object of the statute: to prohibit violence aimed at a specific group. Because the object of the HCPA is to regulate violence, the jurisdictional prongs must establish a sufficient nexus with interstate commerce.

### 3. The Jurisdictional Element Must Include a Substantial Effect on Interstate Commerce

To establish a sufficient nexus to interstate commerce, the jurisdictional element must establish a substantial connection to or effect on interstate commerce. The jurisdictional language requiring that the assault "interfere with commercial or other economic activity in which the victim is engaged at the time," is alone insufficient to establish a sufficient nexus to interstate commerce to forgo also requiring a substantial effect on interstate commerce. This is true for two reasons. First, as described above, the Supreme Court clearly directed that where statutory language directs an "effect on interstate commerce," "the proper test requires [that] the regulated activity 'substantially affects' interstate commerce." *Lopez*, 514 U.S. at 559. Second, the statutory language, standing alone, is too attenuated from interstate commerce to establish the required link to interstate commerce absent a substantial impact.

Some connection to interstate commerce is not enough. *Morrison*, 529 U.S. at 610-612 (rejecting an "attenuated" effect); *Lopez*, 514 U.S. at 555 ("Activities that affected interstate commerce directly were within congress' power; activities that affected interstate commerce

7

indirectly were beyond Congress' reach."). Rather, the government must demonstrate "a substantial relation to interstate commerce." *Id. at* 609. Under this qualitative analysis, the inquiry focuses on the connection between the regulated conduct and interstate commerce. The effect on interstate commerce needs to be both direct and predictable. *Morrison*, 529 U.S. at 615 (rejecting "but-for causal chain" because "[i]n a sense any conduct in this interdependent world of ours has an ultimate commercial origin and consequence"); *Raich*, 545 U.S. at 23 ("predictable impact on future commercial activity"). Judge Niemeyer, in *Brzonkala*, explained that "intrastate activities may be regulated under the Commerce Clause, but only if their relationship to interstate commerce is close and intimate and not 'indirect and remote.'" *Brzonkala,* 169 F.3d at 901 (Niemeyer, J., concurring). This analysis is appropriate because it "draws into question the quality of the nexus between the activity *sought* to be regulated and the interstate commerce *authorized* to be regulated." *Id*.

The government suggests that because Congress can regulate interference with property that is actively employed in a commercial activity, it should also be able to protect individuals who are involved in commercial activity.[4] This argument is baseless. The statutes relied on by the government — prohibiting arson and robbery — each have a direct connection with commerce separate from their jurisdictional elements that the HCPA does not possesses.

---

[4] The government's argument also muddles the connection to commerce, suggesting that being engaged in a commercial activity is synonymous with being "in commerce." This is a necessary step because the Supreme Court has limited Congress' jurisdiction to protection of people and things in commerce. "In commerce" is a term of art, and it is narrowly applied by the courts. *Scheidler v. National Organization for Women, Inc.*, 547 U.S. 9, 17-18 (2006). Courts in the Fourth Circuit concur that persons "in commerce" are "passengers, travelers, operators, or crew members on the instrumentalities of interstate commerce." *United States v. Shahani-Jahromi*, 286 F. Supp. 2d 723, 733 (E.D. Va. 2003); *United States v. Turner*, No. 4:08CR34, 2009 U.S. Dist. LEXIS 49422, at *28 (W.D. Va. June 12, 2009).

8

Arson and robbery are inherently economic crimes. The object of an arson is to destroy property, and the property must be "used in interstate or foreign commerce." 18 U.S.C. § 844(i). The Supreme Court has defined that phrase to mean "active employment for commercial purposes, and not merely a passive, passing, or past connection to commerce." *Jones v. United States*, 529 U.S. 848, at 855 (2000). And even then, courts must inquire "into the function of the building itself," to determine "whether that function affects interstate commerce." *Id*. at 854 (internal quotations omitted). Robbery is also an economic endeavor in that the "criminal has made an economic gain and the victim has suffered an undeniable and substantial loss." *United States v. Bishop*, 66 F.3d 569, 581 (3d Cir. 1995); *United States v. Taylor*, 754 F.3d 217, 222 (4th Cir. 2014) (describing robbery as a "fundamentally economic" crime) (citation omitted); *United States v. Gray*, 260 F.3d 1267, 1274 (11th Cir. 2001), *cert. denied*, 526 U.S. 963 (2002) ("Robbery, even though accompanied by actual or threatened physical harm, is undeniably an *economic* crime that involves the involuntary transfer of economically valuable assets."); *see* 18 U.S.C. § 1951(a), (b)(3).

Allowing the government to prove only an interference with commercial or economic activity at the time of the assault would improperly reach local conduct having no effect on commerce because the terms "commercial" and "economic" encompass a broad swath of conduct. *Lopez*, 514 U.S. at 556 (Commerce power "may not be extended so as to embrace effects upon interstate commerce so indirect and remote that to embrace them . . . would effectually obliterate the distinction between what is national and what is local."). The regulation of commercial or economic activity, without more, captures an almost endless list of activities. For example, the Supreme Court has defined "economic activity" to include "consumption of commodities." *Raich*, 545 U.S. at 25-26 (quoting Webster's Third New International Dictionary 720 (1996)); *see*

*also* Richard A Posner, *Economic Analysis of Law* 3 (4th ed. 1992) (categorizing even housework as an economic activity, defined as "voluntary and involuntary . . . exchange of wealth or utility"). As the Fourth Circuit has explained, the Commerce Clause "power has always been understood to be . . . inadequate to regulate all commercial activity, including commercial activity which is purely local in character and effect." *See Brzonkala*, 169 F.3d at 899.

Thus, it is not the nature of the activity that is important (i.e., commercial/economic or non-commercial/non-economic), but the effect of the activities that is crucial. *Wickard v. Filburn*, 317 U.S. 111, 125 (1942) ("[E]ven if . . . [it] be local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce"); *Jones & Laughlin Steel Corp.*, 301 U.S. at 32 ("It is the effect upon commerce, not the source of the injury, which is the criterion."). Because the statutory language requiring only an interference with economic and commercial conduct captures such a broad swath of conduct, the Court must follow the statutory language and the *Lopez* Court to also require a substantial effect on interstate commerce.

**C. The Rule of Lenity Requires the Court to Adopt the More Lenient Definition**

If there is any ambiguity remaining regarding the HCPA's interpretation, the rule of lenity requires the Court, under the Due Process Clause, to adopt the definition less likely to criminalize a person's conduct. *United States v. Santos*, 553 U.S. 507, 514-15 (2008); *Dunn v. United States*, 442 U.S. 100, 112 (1979). Further, when the "choice must be made between two readings of what conduct Congress has made a crime, it is appropriate, before choosing the harsher alternative, to require that Congress should have spoken in language that is clear and definite." *Jones*, 529 U.S. 850. This is especially true where, as here, the interpretation sought by the government would significantly change the federal-state balance. *Id*. In those

instances, Congress must convey its purpose clearly. Here, Congress articulated the exact opposite — that the HCPA be applied sparingly. *See* H.R. Rep. No. 111-86, pt. 1, at 12 (2009) (stating the HCPA "was carefully crafted to ensure that the Federal Government will continue to limit its prosecutions of hate crimes . . . to the small set of cases that implicate the greatest Federal interest"). As such, this Court's instruction should adopt a narrow interpretation.

## Conclusion

For the reasons stated above, the Defendant respectfully requests that the jury instructions include as an element a "substantial effect on interstate commerce," and do not include any language that allows the government to prove only a de minimis impact on interstate commerce.

Respectfully Submitted,
JAMES WILIAM HILL, III

By: _____/s/_____
               Counsel

Elizabeth W. Hanes, Esq.
Va. Bar # 75574
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd., Suite 1A
Newport News, VA 23601
(757) 930-3660
(757) 930-3662 (fax)
Elizabeth@clalegal.com

Mary E. Maguire, Esq.
Va. Bar # 42505
Assistant Federal Public Defender
Office of the Federal Public Defender
701 E. Broad Street, Suite 3600
Richmond, VA   23219
(804) 565-0860
(804) 648-5033 (fax)
Mary_Maguire@fd.org

**CERTIFICATE OF SERVICE**

       I hereby certify that on October 30, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following: S. David Schiller, Assistant United States Attorney, U.S. Attorney's Office, 919 East Main Street, Suite 1900, Richmond, VA 23219, David.Schiller@usdoj.gov.

                                              _____/s/_____
                                                       Counsel

Elizabeth W. Hanes, Esq.
Va. Bar # 75574
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd., Suite 1A
Newport News, VA 23601
(757) 930-3660
(757) 930-3662 (fax)
Elizabeth@clalegal.com